```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ANTHONY TRAINOR,<br><br>    Plaintiff,<br><br>v.<br><br>ATLANTIC CAPE FISHERIES, INC.,<br>and MARINE MANAGEMENT, INC.,<br><br>    Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 05-2479 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

BERGMAN & BERGMAN
By:  Stanley L. Bergman
1001 Tilton Road
Suite 204
Northfield, NJ 08225
    Counsel for Plaintiff

CHASE KURSHAN HERZFELD & RUBIN LLC
By:  John Francis Gaffney
     Peter J. Kurshan
5N Regent Street
Suite 508
Livingston, NJ 07039
    Counsel for Defendants


**IRENAS**, Senior District Judge:

   Plaintiff commenced this action on May 12, 2005, against Defendants Atlantic Cape Fisheries, Inc. ("Atlantic Cape") and Marine Management, Inc. ("MM").  Plaintiff alleges that Defendants were negligent under the Jones Act, 46 U.S.C. § 688, *et. seq*.  Plaintiff also alleges unseaworthiness of a ship owned

and operated by Defendants, and asks for maintenance and cure pursuant to general maritime law.  This Court has jurisdiction pursuant to 28 U.S.C. § 1333.

Defendants move for summary judgment based on a release executed by Plaintiff.  For the reasons set forth below, the Motion for Summary Judgment will be denied.

## I.

This case arises out of two incidents that allegedly occurred on February 28, 2004, and April 10, 2004, in which Plaintiff injured his back aboard the F/V Master Joel on navigable water.  (Compl. ¶¶ 4-19).  It is undisputed that Defendant MM owned F/V Master Joel, and that Defendant Atlantic Cape entered into an agreement to manage and to operate the vessel.  (Df. Ex. C, Cohen Aff., ¶ 4).

The present summary judgment motion focuses exclusively on the validity of a release executed by Plaintiff on September 3, 2004.  (Df. Ex. 1).  The circumstances surrounding the execution of this release are heavily disputed.

The following is Plaintiff's account of the events. Plaintiff initially injured his back in February, 2004, while working on the F/V Master Joel.  He checked into the emergency room a few days later, but did not report this incident to Defendant Atlantic Cape out of fear that he would be fired.  (Df.

Ex. A, A. Trainor Aff., ¶ 2).  In April, 2004, Plaintiff injured his back again aboard F/V Master Joel, and again he sought medical treatment.  When the doctor informed him that his injury required an MRI of his spine, however, he contacted Daniel Cohen, President and owner of Defendant Atlantic Cape.  (*Id.*, ¶¶ 3-4).  Mr. Cohen insisted that he seek treatment from Dr. Zerbo, Mr. Cohen's osteopathic doctor.  (*Id.*, ¶ 5).

Upon learning Plaintiff's injury in April, 2004, Mr. Cohen questioned him about it and typed a statement for him to sign.  Plaintiff did not discuss his February injury with Mr. Cohen.  Mr. Cohen told Plaintiff and his wife that as long as Plaintiff did not retain an attorney, Atlantic Cape would pay for his medical care and provide maintenance.[1]  (A. Trainor Aff., ¶ 5).  Plaintiff received a check for $1,000 after that meeting and was told that a maintenance check will be provided to him every Friday.  (*Id.*).

After the initial $1,000, Plaintiff received a weekly maintenance check of $500.  (A. Trainor Aff., ¶ 7).  Plaintiff complained that this amount was insufficient, and Mr. Cohen increased the amount to $600 per week.

Dr. Zerbo performed spinal surgery on Plaintiff in June,

---

[1] Plaintiff claims that he also received a call from John Prestogiovanni, F/V Master Joel's insurance adjuster, telling him that he would receive the same crew share he would have received had he been working on the vessel, as long as he did not retain an attorney.  (A. Trainor Aff., ¶ 6).

2004. Prior to surgery, Plaintiff wished to obtain a second opinion, but Mr. Cohen dissuaded him and told him that Dr. Zerbo was one of the best doctors in the area.

Following his surgery, Plaintiff felt that the weekly maintenance was insufficient for living expenses and that $600 per week was less than what the working crew of the F/V Mater Joel was making. He called Mr. Prestogiovanni and tried to obtain more money for maintenance, but Mr. Prestogiovanni refused. (A. Trainor Aff., ¶ 9).

In early July of 2004, Sheila Trainor, Plaintiff's wife, contacted attorney David Anderson, and Plaintiff retained Mr. Anderson's service in the second week of July. (A. Trainor Aff., ¶ 10). A week after he retained Mr. Anderson, Mr. Cohen refused to pay maintenance unless Plaintiff terminated Mr. Anderson. Plaintiff immediately terminated Mr. Anderson, and his maintenance checks resumed. (*Id.*, ¶¶ 10-12).

In early September of 2004, Dr. Zerbo told Plaintiff that his back was recovered and that he would have no problems resuming his work in commercial fishing. Dr. Zerbo provided Plaintiff with a medical note to that effect. (A. Trainor Aff., ¶ 13). Plaintiff and his wife took the note to Mr. Cohen and asked to go back to work. Mr. Cohen told him that he could return to his job and receive his former wage, minus maintenance payments, on the condition that he signs a release. (*Id.*).

The following morning, Plaintiff and his wife returned to Mr. Cohen's office. Mr. Cohen told them that Plaintiff was entitled to approximately $6,000, which was 2/3 of the boat share while he was out of work minus the maintenance payments. Mr. Cohen explained that the 1/3 deduction was for taxes. (A. Trainor Aff., ¶ 14). Mr. Cohen told them that if he signed the release, his reemployment would be guaranteed, and that if Plaintiff had further medical problems, the insurance company would pay for the additional medical expenses (*Id.*).

Based on what Mr. Cohen told him, Plaintiff's understanding was that his claim was limited to 2/3 of a crew share minus maintenance payments. No one at Atlantic Cape explained to Plaintiff his rights under the Jones Act or as a commercial fisherman injured on the job. (A. Trainor Aff., ¶¶ 14, 17-18).

Plaintiff signed the release on September 3, 2004. He did not consult his attorney prior to signing it. Mr. Cohen never suggested that he should consult with an attorney regarding the settlement. (A. Trainor Aff., ¶¶ 19-20). Subsequent to Plaintiff's execution of the release, Mr. Cohen refused to allow him to work on any of Atlantic Cape's vessels. Plaintiff also claims that his back was not completely healed, and that he required additional surgery. (*Id.*, ¶¶ 21-22).

Defendants' account of the events is quite different. According to Mr. Cohen, he first learned that Plaintiff had

sought medical treatment due to his injury on or about May 22, 2004.  (Df. Ex. C, Cohen Aff., ¶ 6).  Mr. Cohen informed Plaintiff that Atlantic Cape could deny responsibility since Plaintiff did not report his injury within 7 days, as required by the United States Coast Guard regulations.  (*Id.*, ¶¶ 7-9).  However, Mr. Cohen told Plaintiff and Mrs. Trainor that he would take full responsibility for Plaintiff's medical care and provide maintenance.  (*Id.*).  Ultimately, Plaintiff and Mr. Cohen agreed to a weekly maintenance payment of approximately $600.  Mr. Cohen advised Plaintiff that this amount would be credited towards the settlement of Plaintiff's claims against Defendants.  (*Id.*).

Mr. Cohen conversed with Plaintiff and Mrs. Trainor weekly from May, 2004, to mid-July, 2004, regarding their daily expenses and the eventual settlement of Plaintiff's claims.  (Cohen Aff., ¶ 10).  Mr. Cohen advised Plaintiff that Defendants would offer 2/3 of the amount actually earned by the deck hands aboard the F/V Master Joel, minus maintenance paid.  (*Id.*).  Mr. Cohen also informed Plaintiff that he would be required to sign a release, and that no settlement would be reached until Plaintiff became fit to return to work.  (*Id.*).

Mr. Cohen repeatedly advised Plaintiff and Mrs. Trainor that they had the right to retain an attorney for legal advice. (Cohen Aff., ¶ 11).  In mid-July, 2004, Mr. Cohen received written notice from Plaintiff stating that he had retained Mr.

Anderson as his attorney.  When Plaintiff and Mrs. Trainor called Mr. Cohen's office to request an increase in the maintenance payment, he informed them that he could not speak to them since they were represented by an attorney.  (*Id.*).  Mr. Cohen also advised Plaintiff to speak to his attorney about a potential settlement of the claims.  (*Id.*).

Plaintiff and Mrs. Trainor subsequently informed Mr. Cohen that they had discharged their attorney.  (Cohen Aff., ¶ 12).  After receiving a letter from the attorney confirming this fact, Mr. Cohen resumed providing maintenance funds, and Plaintiff and Mrs. Trainor agreed the funds would be advances against the eventual settlement.  (*Id.*).

In September, 2004, Dr. Zerbo informed Mr. Cohen that Plaintiff was fit to return to work.  (Cohen Aff., ¶ 13).  Mr. Cohen then met with Plaintiff and Mrs. Trainor to offer them 2/3 of the earnings of the F/V Master Joel's crew members for the period of Plaintiff's absence.  (*Id.*, ¶¶ 14-15).  They reached a tentative agreement of $17,031.48.[2]  (*Id.*).  Mr. Cohen also explained that the previously paid maintenance would be deducted from this sum, and that Plaintiff would need to sign a release. He gave Plaintiff and his wife a blank release form, which they

---

[2] Plaintiff stated in the release that ". . . $6,031.48/xx (six thousand thirty one and 48/100) is paid today to me."  (Df. Ex. 1).  This amount represents the sun of $17,031.48, minus maintenance payment of $11,000.  (*Id.*).

took home to study and confer privately. (*Id.*, ¶¶ 16, 17).

Mr. Cohen informed Plaintiff and Mrs. Trainor that after they sign the release, the company would no longer be responsible for his medical care. Mr. Cohen once against advised Plaintiff that he could retain the services of an attorney. (Cohen Aff., ¶ 16). Plaintiff and Mrs. Trainor told Mr. Cohen that they knew their rights. (*Id.*). Plaintiff signed the release and acknowledged it before a notary public on September 3, 2004.

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[A] party

opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

### III.

Seamen are the wards of the admiralty. Although they are not technically incapable of entering into a valid contract, the courts of equity treat them in the same manner as these courts treat wards in dealing with their guardians. *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246 (1942). Thus, a release executed by a seaman is subject to careful scrutiny and the party offering a seaman's release as a defense has the burden of showing that the release was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. *Id.; see also In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 880 (3d Cir. 1984).

This Court has articulated a two-prong test for reviewing a seaman's release. "First, a court must determine whether the release was executed freely, without deception or coercion. Second, a court must examine whether the seaman entered the settlement with a full understanding of his rights." *Jackson v. Delaware River and Bay Authority*, 334 F. Supp. 2d 615, 617-18

(D.N.J. 2004) (Irenas, J.).  The critical issues under this analysis include the adequacy of consideration and the nature of the medical and legal advice available to the seaman.  *Id.*

In the context of admiralty jurisdiction, summary judgment is often considered an inappropriate procedure to determine the validity of a seaman's release.  *In re Complaint of Bankers Trust Co.*, 636 F.2d at 39.  Indeed, on a motion for summary judgment based on a seaman's release, "the shipowner has an even heavier burden to shoulder, for he must conclusively demonstrate the absence of genuine issues of material fact."  *Halliburton v. Ocean Drilling & Exploration Co.*, 620 F.2d 444, 445 (5th Cir. 1980).

In this case, disputed material facts preclude the Court from granting summary judgment in favor of Defendants.  First, the Court is unable to determine whether Plaintiff received adequate medical advice.  According to Plaintiff, Mr. Cohen insisted that he sought treatment from Dr. Zerbo, a doctor with whom Defendants have close relationship.  (A. Trainor Aff., ¶ 5).  In addition, Plaintiff claims that Mr. Cohen dissuaded him from seeking a second opinion prior to his spinal surgery.  Finally, after Dr. Zerbo discharged Plaintiff, informing him that his back had completely recovered, Plaintiff experienced more problems that required additional spinal surgery.  (A. Trainor Aff., ¶ 22).

Drawing all inferences in favor of Plaintiff, as the Court is required to do when deciding motions for summary judgment, *Pollock*, 794 F.2d at 864, a reasonable fact finder could believe that Plaintiff was coerced into seeking treatment from a biased physician who gave unreliable medical advice. On the other hand, Defendants dispute and deny Plaintiff's account of the events. Thus, whether Plaintiff received adequate medical advice cannot be resolved by summary judgment.

Second, the Court is unable to determine whether Plaintiff received adequate legal advice. According to Plaintiff, Mr. Cohen stopped paying him maintenance after Plaintiff retained an attorney. As soon as Plaintiff terminated his attorney, the maintenance checks resumed. Plaintiff also claims that Mr. Cohen was the only source of information concerning his legal rights. Indeed, Plaintiff claims that based on what Mr. Cohen told him, his understanding was that his claim was limited to 2/3 of a crew share minus maintenance payments. No one at Atlantic Cape explained to him his rights as a commercial fisherman injured on the job, or his rights under the Jones Act. (A. Trainor Aff., ¶¶ 14, 17-18).

Defendants' account is very different. Mr. Cohen claims that he informed Plaintiff of his right to retain an attorney. According to Mr. Cohen, he did not stop communicating with Plaintiff after the retention of Mr. Anderson, but that Mr. Cohen

11

insisted speaking only to the attorney.  In Defendants' verison of the events, Plaintiff and Mrs. Trainor voluntarily terminated Mr. Anderson, and that they were fully aware of their rights.  (Cohen Aff., ¶ 16).  These conflicting accounts cannot be resolved by summary judgment.

Third, the Court cannot determine whether Plaintiff executed the release "freely, without deception or coercion."  *Jackson*, 334 F. Supp. 2d at 617.  According to Plaintiff's affidavit, Mr. Cohen told him that if he signed the release, his reemployment would be guaranteed.  (A. Trainor Aff., ¶ 14).  This was an important impetus for Plaintiff's execution of the release.  Drawing a favorable inference for Plaintiff, a reasonable fact finder could believe that Plaintiff was deceived or coerced into executing the release.[3]

---

[3] In denying the motion for summary judgment, the Court does not rule that the release is invalid.  Rather, the validity of the release is a proper question for the fact finder to resolve at trial.

12

**IV.**

For reasons set forth above, the Court will deny Defendants' motion for summary judgment.  The Court will issue an appropriate order.


Date: June 28, 2007


                                              s/*Joseph E. Irenas*
                                        JOSEPH E. IRENAS, S.U.S.D.J.